**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SEA BRIGHT FIRST AID SQUAD, INC., <br><br> Plaintiff, <br><br> v. <br><br> ARCH INSURANCE COMPANY, <br><br> Defendant. | Civil Action No. 14-1447 (MAS) (LHG) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Defendant Arch Insurance Company's ("Defendant") motion for summary judgment. (ECF No. 39.) Plaintiff Sea Bright First Aid Squad, Inc. ("Plaintiff") filed opposition (ECF No. 40), and Defendant replied (ECF No. 41). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Defendant's motion for summary judgment is granted.

**I.     Background**

This action arises from Defendant's alleged "improper[] adjust[ment]" and "mishandl[ing]" of Plaintiff's insurance claim for property damage caused by Superstorm Sandy. (Compl. ¶¶ 5, 7, ECF No. 1.) On November 26, 2012, approximately one month after Superstorm Sandy, Plaintiff filed a Notice of Claim with Defendant under its inland marine policy ("Policy") for damage to the "[b]rakes and undercarriage" of its 2000 Ford Ambulance. (Certification of William D. Deveau ("Deveau Cert."), Ex. K ("Loss Notice"), ECF No. 39-2.) The next day, Defendant requested that Plaintiff have both its 2000 Ford Ambulance and its 2009

Ford Ambulance appraised by Frontier Adjusters. (Deveau Cert. ¶ 31, ECF No. 39-1.) Thereafter, Frontier Adjusters prepared an appraisal report providing that the repair cost for the 2000 Ford Ambulance would be $40,647.94 and the cost to repair the 2009 Ford Ambulance was $41,423.17. (*Id.* ¶ 32.) On December 12, 2012, McNeil & Company, Inc. ("McNeil"), Defendant's claim administrator, forwarded the appraisal report and a proof of loss form to Plaintiff to complete and return. (*Id.* ¶ 34.) On January 8, 2013, Craig Majka ("Majka") of McNeil sent Plaintiff an e-mail message stating that:

> [t]he difference between the repair estimate and the policy trigger for settlling at the agreed values (75%) is quit [sic] large at this time. As we discussed, to address your concerns regarding the units, we have agreed to use the policy Loss Condition of "Appraisal" to reach an amicable conclusion. Attached is the policy page that outlines the process. Please note the cost of the appraiser you choose is at your own expense.

(Deveau Cert., Ex. Q, ECF No. 39-3.) In correspondence dated March 6, 2013, Majka advised Plaintiff that Defendant was "awaiting a report from a competent and impartial appraiser of [Plaintiff's] choosing." (Deveau Cert., Ex. R, ECF No. 39-3.)

Thereafter, Plaintiff sent correspondence to Defendant stating that it had engaged counsel to pursue its insurance claim, and McNeil contacted Plaintiff's counsel to see if Plaintiff wanted to proceed with the appraisal process. (Deveau Cert. ¶¶ 37-39.) On August 22, 2013, McNeil sent Plaintiff correspondence stating that it had learned that Plaintiff's ambulance vehicles were no longer available for inspection and requesting that Plaintiff submit a completed proof of loss form. (Deveau Cert. ¶¶ 41-42.) In e-mail correspondence dated October 16, 2013, Plaintiff's counsel advised McNeil that Plaintiff "received a net value of approximately $10,000 for the two [ambulance vehicles] combined." (Deveau Cert., Ex. Z, ECF No. 39-3.) In addition, Plaintiff's counsel asserted that Plaintiff "has provided a forensic report indicat[ing] that the [ambulance

2

vehicles] could not be used as Emergency Response Vehicles" and that Plaintiff's mechanic had "explained that the [ambulance vehicles] could not be placed back into service because of the damage they suffered." (*Id.*) Accordingly, Plaintiff's counsel stated that it was Plaintiff's "position that [Plaintiff] is entitled to the total agreed upon price ($262,342.00) less the salvage value received approx.[imately] $10,000.00 (documentation to be provided in the next day or two)." (*Id.*) The correspondence also stated that Plaintiff was willing to accept $225,000 to settle the claim and indicated that if Plaintiff did not hear back from Defendant, it would file a lawsuit to pursue its rights under the Policy. (*Id.*)

On March 7, 2014, Plaintiff filed a complaint against Defendant asserting two causes of action: (1) breach of contract; and (2) violation of the National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001-4129 ("NFIA"). (Compl. ¶¶ 10-18.) Thereafter, the parties entered into a joint stipulation whereby Plaintiff withdrew and dismissed its NFIA claim with prejudice. (ECF No. 12.) In deciding Defendant's first motion for summary judgment, the Court found that "there was absolutely no basis for bringing suit pursuant to the NFIA," and therefore, it "never possessed federal question jurisdiction to decide the matter." (July 27, 2015 Mem. Op. 2-3, ECF No. 33.) In addition, although the Court found that there was the "potential for diversity jurisdiction," it concluded that, as pled, the "complaint lacks allegations supportive of diversity jurisdiction." (*Id.* at 3 & n.2.) Accordingly, the Court dismissed the complaint without prejudice and permitted Plaintiff to file an amended complaint "curing the defective allegations of jurisdiction." (*Id.* at 3.) The Court also noted that if Plaintiff filed an amended complaint, Defendant could refile its summary judgment motion. (*Id.*) On November 18, 2015, Plaintiff filed an Amended Complaint against Defendant asserting two causes of action: (1) breach of

3

contract, and (2) breach of the implied covenants of good faith and fair dealing. (ECF No. 37.)[1] Thereafter, Defendant refiled its motion for summary judgment (ECF No. 39).

## II. Legal Standard

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law identifies which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester Pa.*, 891 F.2d 458, 459 (3d Cir. 1989).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court will not "weigh the evidence and determine the truth of the matter" but will determine whether a genuine dispute necessitates a trial. *Anderson*, 477 U.S. at 249. While the

---

[1] Plaintiff did not provide Defendant's state of incorporation or the amount in controversy in the Amended Complaint, however, the Court is able to discern these facts from Defendant's statement in its Answer that it is "a Missouri corporation" (Answer ¶ 2, ECF No. 38), Plaintiff's assertion of a demand for $100,000 in the Civil Cover Sheet for the complaint (ECF No. 1-1), and its Counter-Statement of Undisputed Facts (Pl.'s Counterstatement of Facts ¶¶ 22, 28, ECF No. 40). Accordingly, the Court finds that there are sufficient facts in the record to find diversity jurisdiction. *See Vodenichar v. Halcon Energy Prop., Inc.*, 733 F.3d 497, 503 n.1 (3d Cir. 2013) ("Courts may consider pleadings as well as evidence that the parties submit to determine whether subject matter jurisdiction exists or an exception thereto applies."). In addition, although Defendant's principal place of business is now in New Jersey, because "[a]t the time Plaintiff's initial complaint was filed, [Defendant's] principal place of business was located in New York, New York" (Answer ¶ 2), Defendant's change of address does not destroy diversity jurisdiction. *See Midlantic Nat'l Bank v. Hansen*, 48 F.3d 693, 696 (3d Cir. 1995) ("Whether diversity jurisdiction exists is determined by examining the citizenship of the parties at the time the complaint was filed.") (citing *Smith v. Sperling*, 354 U.S. 91, 93 n.1 (1957)).

moving party bears the initial burden of showing the absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to "set forth specific facts showing that there is a genuine [dispute] for trial." *Id.* at 250. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine dispute of material fact exists, then the court must grant summary judgment. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). In addition, "a party does not raise a genuine [dispute] of material fact by speculation and conclusory allegations." *Dunkin' Donuts Inc. v. Patel*, 174 F. Supp. 2d 202, 210 (D.N.J. 2001).

### III. Discussion

#### A. Breach of Contract

The Policy states that in the event of loss, the policyholder "must . . . [s]end [Defendant] a signed, sworn proof of loss containing the information [Defendant] request[s] to settle the claim. You must do this within 60 days after our request." (Deveau Cert., Ex. J ("Policy"), Loss Conditions § C (8), ECF No. 39-2.) Plaintiff does not dispute that it "has never submitted a proof of loss" for the ambulances. (Def.'s Statement of Material Facts ("DSOMF") ¶ 20, ECF No. 39-5; Pl.'s Response to DSOMF ("Pl.'s Resp. DSOMF") ¶ 20, ECF No. 40.)[2] In addition, Plaintiff does not assert that it is seeking coverage for anything other than the ambulance vehicles. (*Id.* ¶¶ 6, 18; Pl.'s Counterstatement of Material Facts ("Pl.'s Counter SOMF") ¶¶ 22, 28, ECF No. 40.) Nor does Plaintiff dispute that "proof of loss" was a "requirement" for coverage under the Policy. (Pl.'s Opp'n Br. 7, ECF No. 40.) Plaintiff, however, contends that it

---

[2] In contravention of Local Civil Rule 56.1, Plaintiff included its response to Defendant's Statement of Undisputed Material Facts in its opposition brief, rather than creating a separate document. L. Civ. R. 56.1. Notwithstanding Plaintiff's failure to comply with the Local Civil Rule 56.1, the Court shall consider Plaintiff's responses.

substantially complied with this requirement by submitting detailed lists of the property damaged in Superstorm Sandy. (Pl.'s Counter SOMF ¶¶ 23-25.) Plaintiff has not, however, submitted any admissible evidence showing that it included the ambulance vehicles in these lists.

The lists of damaged property that Plaintiff submitted in opposition to Defendant's motion for summary judgment detail only the first aid supplies and electronic devices that Plaintiff allegedly lost as a result of Superstorm Sandy. (*See* Certification of Robert T. Trautmann ("Trautmann Cert."), Exs. A-C, ECF No. 40-1.) Given that the Policy clearly and unambiguously requires a policy holder to submit a sworn proof of loss within sixty days of Defendant's request, Defendant requested a proof of loss on December 12, 2012, and it is undisputed that Plaintiff never submitted a proof of loss for the ambulance vehicles, the Court finds that Plaintiff has not satisfied a condition precedent under the Policy. (Pl.'s Resp. DSOMF ¶¶ 10, 20.)

In addition, given Defendant's repeated requests for the proof of loss (*see* Def.'s Statement of Material Facts ("SOMF") ¶¶ 10, 15, 16, 17) and Plaintiff's failure to offer any explanation as to its failure to submit the proof of loss, Plaintiff's failure to comply with this condition precedent for recovery appears willful and may not be deemed a "technical breach." *Cf. Tell v. Cambridge Mut. Fire Ins. Co.*, 150 N.J. Super. 246, 254 (Union County Ct. 1977) (where policyholder submitted a "list of all items stolen and the value of each" and, after exchanging correspondence with insurer for nine months, policyholder also submitted a "'sworn statement in proof of loss'," court found that the failure to provide a proof of loss within sixty days of the loss and in a form acceptable to defendant was only a "technical breach" of the policy). Thus, here the Court finds that Plaintiff's failure to provide a proof of loss, as required

by the Policy, is fatal to its claim of breach of contract.[3] *See Prudential Prop. & Cas. Ins. Co. of N.J. v. Nardone*, 332 N.J. Super. 126, 139 (N.J. Super. Ct. Law Div. 2000) (holding that "[o]ne may not invoke the judicial process seeking affirmative relief and at the same time flout the duties imposed by that process to avoid development of proof having a bearing upon his or her right to such relief"). Moreover, while the Court notes that Defendant has argued that it was prejudiced by Plaintiff's failure to submit a proof of loss (*see* Def.'s Reply Br. 13, ECF No. 41), a showing of prejudice is not required. *See Brindley v. Firemen's Ins. Co. of Newark*, 35 N.J. Super. 1, 10-11 (App. Div. 1995); *see also Fed. Ins. Co. v. Levy*, No. 10-3788, 2011 WL 4352683, at *2 (D.N.J. Sept. 16, 2011) (stating that courts have deemed compliance with and insurer's demand for investigation and proof of loss a condition precedent to recovery) (collecting cases).[4] Accordingly, construing the evidence in the light most favorable to Plaintiff, the Court finds that Defendant is entitled to judgment as a matter of law on Plaintiff's breach of contract claim.

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing

Under the "No Action Clause" in the Policy, policy holders may not bring legal actions against the Defendant for coverage unless "[t]here has been full compliance with all the terms of this Coverage Part." (Policy, General Conditions § C (1).) As discussed above, Plaintiff has

---

[3] Having found that Plaintiff's failure to submit a proof of loss for the ambulance vehicles is fatal to its breach of contract claim, the Court does not reach Defendant's additional argument that Plaintiff's failure to comply with the appraisal clause is also fatal to this claim.

[4] Plaintiff's reliance on *Resolution Trust Corp. v. Moskowitz*, 868 F. Supp. 634, 641 (D.N.J. 1994), is misplaced. In *Resolution Trust Corp.*, the court addressed the issue of whether the *late* filing of a proof of loss is fatal to recovery. *Id.* at 639. The court did not address whether the complete failure to provide proof of loss, as occurred here, is fatal to recovery. *Id.* Here, Plaintiff failed to cite to any analogous case law in which a court found substantial compliance where a party failed to file a proof of loss altogether.

failed to comply with the proof of loss requirement under the Policy. Accordingly, pursuant to the Policy, Plaintiff may not bring any claims against Defendant for coverage, including breach of the implied covenant of good faith and fair dealing. *See DiFrancisco v. Chubb Ins. Co.*, 283 N.J. Super. 601, 613 (App. Div. 1995). Moreover, Plaintiff has not offered admissible evidence or even alleged sufficient facts to indicate that Defendant acted in bad faith in denying coverage for the ambulance vehicles. *Cf. Tucci v. Hartford Fin. Servs. Grp., Inc.*, No. 08-4925, 2011 WL 2555379, at *14 (D.N.J. June 27, 2011) (stating that to survive motion for summary judgment on breach of the duty of good faith and fair dealing for denial of coverage, insurer must "point to a genuine dispute of material fact over whether [insurer] had a debatable reason for denial of any benefits"). Thus, construing the evidence in the light most favorable to Plaintiff, the Court finds that Defendant is entitled to judgment as a matter of law on Plaintiff's breach of the implied covenant of good faith and fair dealing claim.

## IV. Conclusion

For the reasons set forth above, Defendant's motion for summary judgment is granted. An order consistent with this Memorandum Opinion will be entered.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Date: August 25th, 2016